UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JULIE WEISS, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) )  Civil Action No. 08-1400 (RMC) |
| DIRK KEMPTHORNE, Secretary of the Interior, *et al.*, | ) ) ) ) |
| Defendants. | ) ) ) |

MEMORANDUM OPINION

When consent of the National Park Service is necessary to lease 22 acres of a public park to become part of a public golf course, must the Park Service evaluate the impact on the full park or on the entire 500 acre development project on adjoining land to determine whether an environmental impact statement is needed?  The answer is no.  Plaintiffs are residents of Benton Harbor, Michigan who claim that they will be adversely affected by the conversion of part of a public park on the shore of Lake Michigan into three holes of a public golf course.  Plaintiffs brought this suit alleging that Defendants[1] violated the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.*, and the Land and Water Conservation Fund Act ("LWCFA"), 16 U.S.C. § 460*l*-4 *et seq.*, by failing to require an Environmental Impact Statement and inadequately considering

---

[1] Defendants include Dirk Kempthorne, in his official capacity as Secretary of the Department of Interior, which oversees Park Service permitting; Mary Bomar, in her official capacity as Director of the National Park Service; Ernest Quintana, in his official capacity as Regional Director of the Midwestern office of the National Park Service; Rebecca Humphries, in her official capacity as Director of the State of Michigan's Department of Natural Resources; and the City of Benton Harbor, Michigan.  The developer, Harbor Shores Community Redevelopment, Inc., intervened as an additional defendant.

alternatives when it approved the conversion of park land to public golf course.[2] Plaintiffs seek review of the Park Service's approval of the conversion under the Administrative Procedure Act, 5 U.S.C. §§ 701-706. Plaintiffs assert that their right to be fully informed of and participate in federal actions affecting the environment has been impaired and that their use and enjoyment of the Park will be harmed if the project continues. Plaintiffs seek a temporary restraining order, enjoining all construction activities within the Park. Defendants oppose. As explained below, Plaintiffs' request for a temporary restraining order will be denied.

## I. FACTS

Plaintiffs[3] all live within three miles of Jean Klock Park. The 73-acre Park is located in Benton Harbor, in southeast Michigan, about 90 miles from Chicago. The Park's natural features include sand dunes running along its entire half-mile stretch parallel to Lake Michigan. John and Carrie Klock, whose daughter Jean died in early childhood, donated the property for the Park to the City of Benton Harbor in 1917. They gave the Park to the City in perpetuity to preserve the dunes and lakeshore and dedicated the Park to "the children."

The National Park Service and the Department of Interior ("Federal Defendants") have an interest in this local Park because in 1977, the federal government provided a $50,000 grant for improvements at the Park. Due to the grant, Federal Defendants acquired a protectable interest in their investment under the LWCFA. This interest gives the Federal Defendants an oversight role with respect to any disposition of the property subject to the grant. *See* 16 U.S.C. §§ 460*l*-8(f)(3);

---

[2] The Complaint also makes legal claims under state law that are not relevant to Plaintiffs' motion for temporary injunction.

[3] Plaintiffs are: Julie Weiss, Nicole Moon, Emma Kinnard, James Duncan, Lea' Anna Locey, Scott Elliott, and Ronnie Whitelow, all residents of the City of Benton Harbor or of Benton Harbor Township.

36 C.F.R. §59.3. Accordingly, the Federal Defendants' approval was required before conversion of some of the Park to golf holes and fairways.[4]

A nonprofit developer, Harbor Shores Community Redevelopment, Inc. ("Harbor Shores"), plans to build three golf fairways and holes in Jean Klock Park. These golf holes are part of a 500 acre project including an 18-hole championship signature golf course designed by Jack Nicklaus and a residential and commercial development. According to Plaintiffs, these three holes would "consume virtually all of the [Park's] lengthy dune summit" and encroach on a natural marsh. Compl. ¶ 18. The City and Harbor Shores view the larger development as a project that will revitalize the economy of an impoverished city. The City asserts that Benton Harbor is in great distress — it has a 17% unemployment rate, a 57% illiteracy rate, and more than 42% of its population lives below the poverty line. City's Opp'n at 3.

In order to build three golf holes in part of the Park, the City obtained federal approval to lease 22.11 acres of the Park to Harbor Shores for a term of 35 years, with two 35 year renewal options. The portion of the Park covered by the lease includes a picnic pavilion, an overlook pavilion, and a large parking lot; it does not include the beach or the lake side of the sand dunes. In exchange for the lease, Harbor Shores will grant to the City as "mitigation property" various parcels of land along the Paw Paw River, totaling 38 acres. The City plans to combine the new parcels with existing public trails and to develop a twelve mile public trail system that will include fishing decks, boat launch facilities, picnic facilities, and parking.

The environmental review process began in April 2006 with six public comment sessions held in August 2006. The City presented a proposal to the Park Service, but the Park

---

[4] The Secretary delegated this authority to the Director of the Park Service, who delegated authority to the Regional Director of the Midwest Region.

Service did not approve the initial request. The City revised the proposal and opened it to public comment from April 2 to May 17, 2008. The City held a public hearing during the comment period. The City then added the public comments and submitted the revised proposal to the Michigan Department of Natural Resources. The Michigan DNR recommended approval to the Park Service, and the Park Service approved the lease on July 25, 2008.

Plaintiffs seek a temporary restraining order and preliminary injunction to enjoin "all destruction, conversion, and construction activities which are planned within Jean Klock Park, pending completion of the litigation of the issues raised in the Complaint." Pls.' Mem. at 15. More precisely, Plaintiffs' motion for TRO seeks the following:

> 1. An injunction barring Defendants, Intervening Defendant [Harbor Shores] and their agents, employees, representatives or other persons or corporations operating in concert with them from implementing or further implementing the National Park Service's final decision to allow conversion and the 105-year leasehold agreement between the City of Benton Harbor and [Harbor Shores], including any and all demolition, destruction of natural features, construction or other ground-disturbing activity of any sort within Jean Klock Park, until such time as Defendants have completed a lawful environmental document that complies with the substantive and procedural requirements of NEPA and LWCFA;
>
> 2. An injunction ordering Defendants to prepare a new or revised NEPA document, in compliance with the substantive and procedural requirements of NEPA and or LWCFA;
>
> 3. Any other, further relief as the Court deems just and proper.

Pls.' Mot. for TRO at 2-3. Defendants argue that the request for a temporary restraining order should be denied. The Court[5] held a hearing on the matter on October 2, 2008, and now issues its decision.

---

[5] Pursuant to LCvR 40.8, the Motions Judge shall handle "matters requiring immediate action in civil cases already assigned to a judge of this court, if that judge is absent or indicates that he or she is unavailable or otherwise unable to hear the matter." The Court was assigned as "motions

## II.  STANDARD OF REVIEW

A court must consider four factors in deciding whether to issue a temporary restraining order:[6]

1. whether the movant has shown a substantial likelihood of success on the merits;

2. whether the movant would suffer irreparable injury if the injunction is not granted;

3. whether the issuance of a preliminary injunction would cause substantial harm to other interested parties; and

4. whether the public interest would be served by the issuance of an injunction.

*Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir. 1998).  The foregoing factors should be balanced on a "sliding scale," *i.e.*, a lesser showing on one factor can be surmounted by a greater showing on another factor.  *CSX Transp., Inc. v. Williams*, 406 F.3d 667 (D.C. Cir. 2005).  Even so, in order to justify intruding into the ordinary litigation process by issuing a preliminary injunction, it is critical that a movant 1) make a substantial showing of likelihood of success on the merits, *Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 38 F. Supp. 2d 114, 140 (D.D.C. 1999), and 2) make a showing of at least some injury.  *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995).   A preliminary injunction is "an extraordinary remedy that should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion."  *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004).

---

judge" when Plaintiffs filed their motion for temporary restraining order and decides the motion after full briefing and an evidentiary hearing because the regularly assigned judge was not able to hear the matter.

[6] The same standard applies to both temporary restraining orders and to preliminary injunctions.  *Experience Works, Inc. v. Chao*, 267 F. Supp. 2d 93, 96 (D.D.C. 2003).

### III. ANALYSIS

#### A. Likelihood of Success on the Merits

Plaintiffs contend that (1) Defendants failed to prepare an Environmental Impact Statement ("EIS") and (2) Defendants failed to consider practical alternatives to the conversion as required by NEPA and LWCFA. There is no private cause of action under NEPA and all challenges must be brought under the APA. *Karst Envtl. Educ. & Prot., Inc. v. EPA*, 475 F.3d 1291, 1295 (D.C. Cir. 2007). Similarly, a challenge to a Park Service approval under the LWCFA is reviewed under the arbitrary and capricious standard of the APA. *Save Our Parks v. Kempthorne*, No. 06-6859, 2006 WL 3378703, at *9 (S.D.N.Y. Nov. 15, 2006). Thus, the Court must treat Plaintiffs' claims under NEPA and LWCFA as challenges under the APA.

The APA requires a reviewing court to set aside an agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Tourus Records, Inc. v. DEA*, 259 F.3d 731, 736 (D.C. Cir. 2001). In making this inquiry, the reviewing court "must consider whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Marsh v. Oregon Natural Res. Council*, 490 U.S. 360, 378 (1989) (internal quotation marks omitted). An agency action usually is arbitrary or capricious if

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). As the Supreme Court has explained, "the scope of review under the 'arbitrary and capricious' standard is

narrow and a court is not to substitute its judgment for that of the agency." *Id*. Rather, the agency action under review is "entitled to a presumption of regularity." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). If the district court can "reasonably discern" the agency's path, it should uphold the agency's decision. *Pub. Citizen, Inc. v. FAA*, 988 F.2d 186, 197 (D.C. Cir. 1993). Thus, in order to be successful on their claims under NEPA and LWCFA via the APA, Plaintiffs must show that the Park Service acted arbitrarily and capriciously in approving the City's lease of 22 acres of the Park to Harbor Shores.

> The approval of the Park Service was required by the terms of the LWCFA:
>
> No property acquired or developed with assistance under this section shall, without the approval of the Secretary, be converted to other than public outdoor recreation uses. The Secretary shall approve such conversion only if he finds it to be in accord with the then existing comprehensive statewide outdoor recreation plan and only upon such conditions as he deems necessary to assure the substitution of other recreation properties of at least equal fair market value and of reasonably equivalent usefulness and location.

16 U.S.C. §§ 460*l*-8(f)(3); *see also* 36 C.F.R. § 59.3. In sum, once an area like Jean Klock Park has received federal funding under the LWCFA, it must be continuously maintained in public recreation use unless the Park Service approves substitution property of reasonably equivalent usefulness and location and of at least equal fair market value. 36 C.F.R. § 59.3(a).[7]

Federal review under LWCFA triggered the requirement that Park Service conduct

---

[7] The approval requirement was not triggered, as Plaintiffs allege, by a plan to convert public park land to private use, as the planned golf course will be public. The approval requirement was triggered by the City's *lease* of part of the Park to a private entity, Harbor Shores. *See* Fed. Defs.' Opp'n, Ex. 2 (EA Summary at 1) ("In some circumstances, conveyance of rights in park land (through lease, easement, or sale) meets the regulatory definition of a conversion.").

an Environmental Assessment ("EA") under NEPA. *See* 40 C.F.R. § 1508.9 (defines an EA). Thus, the Park Service had to determine if its approval of the lease was a major federal action significantly affecting the quality of the human environment. 42 U.S.C. § 4332(2)(C). The Park Service found that the lease was not a major federal action significantly affecting the quality of the human environment, and issued a finding of no significant environmental impact from the lease. Fed. Defs.' Opp'n, Ex. 1. Because the Park Service found no significant impact, it did not prepare an EIS. 40 C.F.R. § 1501.4 (an EA determines whether an EIS is required).

Plaintiffs are not likely to succeed on the merits of their claim under NEPA. First, they erroneously contend that no EA was conducted in this case. Second, their claim that the Park Service should have examined the entire 500 acre golf and residential project when conducting its EA is in error. Plaintiffs assert that in determining whether an EIS was required the Park Service should have examined and inventoried the City's proposed development of the entire Park, including the building of a lakeside road with angled parking, *see, e.g.*, Pls.' Reply at 6 & 15, and that the Park Service should have considered the impact of the entire 500 acre development on the environment. *See, e.g.*, Pls.' Reply at 22 n.8 (Ms. Moon testified at the evidentiary hearing that a climax forest on the private land portion of the golf course would be destroyed).

NEPA requires that federal agencies prepare an EIS upon finding a major federal action that significantly affects the environment. 42 U.S.C. § 4332(2)(C). In conducting an EA where the proposal being reviewed is but a small piece of a larger project over which the agency has no authority, an agency does not go beyond the scope of its permitting authority to review the area over which it has no jurisdiction. *Compare Sylvester v. U.S. Army Corps. of Eng'rs*, 884 F.2d 394, 398-99 (9th Cir. 1989) (Army Corps was not required to review the entire resort project in order to

process a permit related to the golf course portion of the project); *Winnebago Tribe v. Ray*, 621 F.2d 269, 273 (8th Cir. 1980) (agency did not have to address the impact of the entire power transmission line when issuing a permit for the line to cross navigable waters) *with Friends of the Earth, Inc. v. Army Corps. of Eng's*, 109 F. Supp. 2d 30, 40 (D.D.C. 2000) (agency must consider overall project when permitting jurisdiction extends to the "heart" of the project, in this case to the floating casinos themselves). Here, the Park Service was required to evaluate the proposed lease of only 22 acres of the Park to Harbor Shores. The Park Service determined that the *lease,* which converted property from general public park use to public golf course use, did not constitute a major federal action that significantly impacted the environment. The Park Service was not required to consider the City's plans for development of the entire Park, let alone the plans for the entire 500 acre residential and golf course development. Plaintiffs are not likely to succeed on their claim that an EIS should have been required.[8]

As part of the EA and lease approval process, the City submitted a "Conversion and Mitigation Proposal" to the Park Service indicating that the lease was the preferred alternative and indicating why it had not chosen six other alternatives, including no action. *See* City's Opp'n, Ex. 1 (Proposal at 4-6). The City's proposal noted that by taking no action and leaving the Park "as is," the Park would remain underutilized, in continued disrepair, with poor accessibility. Alternatives 2 and 6, options to build the golf course in areas outside the City, would undermine the City's purpose of attracting investment, increasing the City's tax base, and reaping the revenues to be generated by the golf course and related commercial and residential development. Other locations

---

[8] Plaintiffs do not have standing to bring a NEPA claim against the non-Federal Defendants in this matter. *Rattlesnake Coalition v. EPA*, 509 F.3d 1095, 1105 (9th Cir. 2007) (only the federal government can adopt an EA or an EIS); *see Karst Evtl.*, 475 F.3d at 1298 (by its terms, APA does not apply to state agencies).

were rejected due to a lack of easy access, due to the impediment created by the location of a railway, and because they were not feasible because of wetland protection, the need for environmental cleanup, or other regulatory constraints. The Park Service thus reviewed various alternatives when it approved the lease, and Plaintiffs have not shown a likelihood of success on their claim that the Park Service acted arbitrarily by failing to consider such alternatives. The Park Service was not required to consider every alternative, only reasonable alternatives. *See* 36 C.F.R. 59.3(b)(1).

Plaintiffs also have not shown a likelihood of success on their claim that the Park Service acted arbitrarily and capriciously in finding that the mitigation property was of reasonably equivalent usefulness and location. The mitigation property expands recreational opportunity to include public trail system, fishing decks, boat launch facilities, picnic facilities, and parking. "The mitigation parcels are located strategically to provide public access to the parkland, and are tied together through the creation of a 12.8 mile public trail system and foot bridges linking Jean Klock Park to park sites along the Paw Paw River, downtown Benton Harbor, and residential areas." Harbor Shores' Opp'n at 19.

In approving the lease, the Park Service determined that the fair market value of the leased Park property, appraised at $900,000, was equivalent to the fair market value of the mitigation property, appraised at $999,500. Plaintiffs contend that the leased Park property was substantially undervalued. Plaintiffs, however, do not have standing to challenge a conversion approval under LWCFA based on the equal fair market value requirement. *See Save Our Parks*, 2006 WL 3378703, at *17. The purpose of the fair market value requirement is to make sure that federal grant monies are not squandered due to a conversion that replaces property with less valuable property. The alleged fiscal injury involved is an injury to the government, not to the individual plaintiffs. *Id*. "In

the absence of any particularized injury which harms them 'in a personal and individual way,' *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992), plaintiffs' general interest in the substitution of equivalent parcels of land is insufficient to provide standing for a viable challenge." *Save Our Parks*, 2006 WL 3378703, at *17.

In sum, it is not likely that Plaintiffs will prevail on the merits of this APA action. It is not likely that Plaintiffs can show the Park Service's approval of the conversion under LWCFA and finding of no significant impact under NEPA was not based on a consideration of the relevant factors or was a clear error of judgment, and in these circumstances the Court may not substitute its own judgment for that of the Park Service.

### B.  Irreparable Harm

Plaintiffs allege that the conversion and implementation of the lease between the City and Harbor Shores will result in physical destruction and permanent damage to the Park — damage that cannot be later remedied with money damages.  Even so, in order to justify intruding into the ordinary litigation process by issuing a temporary restraining order it is critical that Plaintiffs make a substantial showing of likelihood of success on the merits. *See Am. Bankers*, 38 F. Supp. 2d at 140. This Plaintiffs have failed to do.

### C.  Harm to Others and Public Interest

Plaintiffs contend that it is in the public interest to protect the environment.  Harbor Shores and the City assert that an injunction would harm them and their constituency, the public, because construction delays are expensive and delay could jeopardize the entire project due to the risk of lost financing. Defendants further claim that an injunction is contrary to the public interest because the conversion of the Park and its development is for the benefit of the public and is part of

a much-needed economic revitalization plan. In this case, the balance of harm favors denial of the request for a restraining order.

## IV. CONCLUSION

For the reasons stated above, Plaintiffs' motion for a temporary restraining order [Dkt. #11] will be denied. A memorializing order accompanies this Memorandum Opinion.


Date:   October 6, 2008                     _____/s/_____
                                            ROSEMARY M. COLLYER
                                            United States District Judge